UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BETTY S. HOWARD,

      Plaintiff,                         Civil Action No. 05-73557

v.                                HON. AVERN COHN
                                  U.S. District Judge
                                  HON. R.  STEVEN WHALEN

COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Betty S. Howard brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On January 24, 2003,  Plaintiff filed applications for Disability Insurance Benefits (DIB), alleging an onset date of March 7, 1997 (Tr. 34-36).  After the Social Security Administration (SSA) denied her benefits on March 26, 2003, she made a timely request for an administrative hearing, held on February 16, 2005 in Flint, Michigan (Tr. 22).

-1-

Administrative Law Judge (ALJ) Neil White presided (Tr. 278).  Plaintiff, represented by attorney Robert McDonald, testified (Tr. 281-296).  Pauline McEachin, acting as Vocational Expert (VE) also testified (Tr. 296-297).  On August 16, 2005, ALJ White found that Plaintiff retained the ability to perform her past relevant work (Tr. 22).  Plaintiff filed for judicial review of the final decision on September 16, 2005.

### BACKGROUND FACTS

Plaintiff,  born March 20, 1957 was age 48  when the ALJ issued his decision  (Tr. 7, 34).  She completed high school and worked previously as a school bus driver (Tr. 49, 54). Plaintiff alleges that a right arm fracture resulting in Carpal Tunnel Syndrome, diabetes, heart attack, arthritis, hip spurs, and two back surgeries prevent her from working (Tr. 48).

A.    **Plaintiff's Testimony**

Plaintiff, just short of her 48th birthday, testified that she lived in Linden, Michigan with her husband and teen-aged daughter (Tr. 281).  A high school graduate, Plaintiff reported that she had worked as a school bus driver until March, 1997 (Tr. 281-282).  She indicated that her disability was precipitated by a bus accident in which she broke her arm (Tr. 282).  She added that the school district had attempted to reassign her the job of hall monitor, but knee, hip, and leg problems, along with complications from diabetes prevented her from performing her new position (Tr. 282).  She stated that she had not attempted to secure other employment, indicating that her physician deemed her incapable of working (Tr. 282).

-2-

Plaintiff reported that before working as a bus driver, she worked as a custodian and as a gas station cashier (Tr. 283). She opined that she was presently unable to perform either position because of her inability to stand for long periods along with right hand numbness (Tr. 283-284). She alleged that any movement created right arm, wrist, and hand pain (Tr. 284). She reported that she was unable to perform heavy lifting and experienced difficulty pushing and pulling (Tr. 284). She noted that right arm problems obliged her to vacuum with her left hand and created difficulty picking up small objects with her right hand (Tr. 284, 285).

Plaintiff testified that she underwent two back surgeries in the 1980s that reduced her level of discomfort, but alleged that she continued to experience level "eight" pain on a scale of one to ten (Tr. 285-286). She indicated that she experienced the least discomfort when reclining (Tr. 286). She denied undergoing physical therapy subsequent to her second surgery, stating further that medication she currently took for back pain did not provide relief (Tr. 286). She alleged that knee problems prevented her from climbing or descending stairs (Tr. 287). In addition to conditions related to her knees, back, and arm, Plaintiff testified that she had experienced a heart attack (Tr. 287). She stated further that diabetes obliged her to wear reading glasses and made her feet swell (Tr. 287). She reported that she had been taking insulin for three years (Tr. 289). She also stated that she experienced daily chest pains and hip spurs (Tr. 289-290).

Plaintiff opined that she could stand for up to two hours in an eight-hour workday, but if she were required to sit for two hours at a time she would need to lie down to recover (Tr.

290-291).  She testified that she regularly arose at 5:30 a.m. and retired at around midnight, characterizing her sleep pattern as "up and down all night long" as a result of pain (Tr. 291). She indicated that she continued to perform housework with the help of her husband and daughter (Tr. 292).  She reported that she also spent approximately 45 minutes shopping for groceries twice a month, visited her mother regularly, and dined out occasionally (Tr. 292-293).  She stated that she spent most of each day at home watching television, indicating that hip discomfort obliged her to lie to two to three times a day for approximately half an hour (Tr. 294).  She reported that she was unable to lift more than ten pounds (Tr. 291).

Plaintiff reckoned that she could not perform the work of either a hostess or a receptionist, indicating that the standing and walking requirements of the former position and the sitting requirements of the later precluded those jobs (Tr. 294).  She alleged fatigue as a result of diabetes, adding that her weight had dropped in recent years from 329 to 264 pounds (Tr. 295).  She denied any mental limitations (Tr. 296).

### B.    Medical Evidence

March, 1996 imaging results show mild to moderate degenerative changes to Plaintiff's right knee (Tr. 95).  In March, 1997, Plaintiff sought emergency treatment after fracturing her right wrist in a bus accident (Tr. 69).  Treating staff advised her to keep her wrist elevated (Tr. 67).  A patient history form completed by Plaintiff for George A. Dass M.D. indicates that she was currently being treated for a bad knee (Tr. 146).  A May, 1997 examination resulted in a work release order (Tr. 212). Physical therapy notes from June, 1997 indicate the Plaintiff reported less pain in her right wrist and hand with an increased

range of motion in her right wrist, fingers, and hand (Tr. 164). The following August, Dr. Dass found that Plaintiff's "mild" carpal tunnel did not warrant surgery (Tr. 144, 160). He indicated that he did not believe Plaintiff had "any incentive to return back to work in view of her subjective complaints of paresthesia and pain" (Tr. 144). An August 26, 1997 notation states that Plaintiff wanted a second opinion (Tr. 144).

In August and September, 1997, Plaintiff's physical therapist reported that she exhibited objective signs of improvement, but noted that Plaintiff complained of continued finger, hand, and wrist numbness that had "moved up her arm to her face" (Tr. 172, 175, 176, 178 ). In October, 1997, Dr. Dass, noting that Plaintiff had sustained a radial styloid fracture, advised her that he would perform a radial nonunion operation to relieve her continued wrist problems only if she quit smoking (Tr. 74). He directed Plaintiff to contact him if and when she stopped smoking (Tr. 74). Dr. Dass's December, 1997 notes indicate that her fracture showed progressive healing (Tr. 142). He opined that Plaintiff did not require surgical intervention (Tr. 142).

In June, 1998, Michelle Henderson, M.D., noting that Plaintiff's distal radius interarticular fracture had healed, found that Plaintiff was able to perform her job as a bus driver (Tr. 232). Dr. Henderson opined that Plaintiff should not be required to lift more than 15 pounds for the next six months (Tr. 232).

In November, 1998, Orlando Benedict, M.D. noted that Plaintiff had undergone injections and physical therapy for degenerative problems in both knees (Tr. 79). An MRI of Plaintiff's right knee performed in February, 1999 showed "marked osteoarthritis of the

-5-

right knee" (Tr. 224).  October, 1999, imaging results showed that she experienced mild joint space narrowing of the right hip joint (Tr. 86).  The same month, Dr. Dass noted that Plaintiff continued to seek damages against the driver of the other vehicle involved in her March, 1997 accident (Tr. 139).

In September, 1999, a Functional Capacity Evaluation (FCE) found that Plaintiff demonstrated an ability to perform work at the light exertional level (Tr. 155).  The same report, noting that Plaintiff's work as a bus driver required a medium level of exertion, recommended that she seek retraining (Tr. 155).  The report concluded by stating that Plaintiff "was not totally disabled"[1] (Tr. 148).    Michael J. Sorscher, M.D., an orthopedic surgeon, stating that he had no way of determining whether Plaintiff could return to her bus-driving job, opined that "she is unlikely totally disabled from any and all occupations (Tr. 227).

In December, 2001, James E. Kure, M.D., informed Dr. Benedict that results of Plaintiff's stress test were abnormal, noting that she reported strenuous physical activity

---

[1]The therapist's report states that during her examination, Plaintiff alluded to ongoing litigation relating to her March, 1997 injury.  She told the therapist that her lawyer advised her not to undergo the examination without a third party present (Tr. 148).  Notes indicate that upon the advice of counsel, she also refused to sign an information release form for billing purposes (Tr. 149).  Observing that Plaintiff's "abnormal illness behavior" was "high," the therapist added that tests results (which  placed Plaintiff's residual abilities mostly  in the low percentile range) were generally "dependent on the client's motivation" (Tr. 151).  The therapist also opined that Plaintiff's range of motion limitations were exacerbated "by [the] continual wearing of a cock-up splint" (Tr. 155).  She reported "no significant edema or gross atrophy present in the right wrist compared to the left wrist" (Tr. 155).

precipitated chest pressure (Tr. 77).  Dr. Kure reported that although Plaintiff had been instructed to avoid heavy lifting, "[s]he was able to do her housework without substantial limitations" (Tr. 77).  His notes state that Plaintiff declined his advice to seek hospital admission (Tr. 78).  The same month, Plaintiff underwent cardiac cathterization (Tr. 76). In January, 2002, she reported intermittent chest discomfort (Tr. 76).  Dr. Kure's notes indicate that Plaintiff admitted that she continued to smoke (Tr. 76).

In September, 2002, Plaintiff received a cortisone injection to the right hip, reporting an "immediate improvement in symptoms" (Tr. 225).  The next month, Dr. Sorscher, noting that injections had improved Plaintiff's condition, reported that she had also requested anti-inflammatory medication (Tr. 226).

In February, 2003, Dr. Benedict opined that Plaintiff's hip condition, along with coronary heart disease, and high blood pressure prevented her from working (Tr. 275).  In March, 2003, a Physical Residual Functional Capacity Assessment, noting that Plaintiff experienced diabetes and arthritis in the right hip, found that she retained the ability to lift 20 pounds occasionally, 10 pounds frequently, along with the ability to stand, walk, or sit for up to six hours in an eight-hour workday (Tr. 122).  The report found further that Plaintiff could perform unlimited pushing and pulling within the light exertional limitations (Tr. 122). The assessment limited her to occasional climbing, balancing, stooping, kneeling, crouching, and crawling, but noted that she did not possess manipulative, visual, communicative, or environmental limitations (Tr. 123-125).   The assessment noted that Plaintiff's diabetic condition was well controlled and that she experienced "mild" degenerative joint changes

-7-

involving the right hip (Tr. 122).

In November, 2003, imaging tests performed on Plaintiff's cervical spine, left wrist and right ankle showed unremarkable results (Tr. 236, 238, 239).  Imaging of her right shoulder showed no evidence of a fracture, but showed a small area of soft tissue calcification consistent with calcific tendinitis (Tr. 237).  In January, 2004, Dr. Kure stated that Plaintiff, then 279 pounds, was "doing fairly well," but encouraged her to lose weight and continue to monitor her hypertension, hyperglycemia, and hyperlipidemia (Tr. 242). Stress tests performed in January, 2004 showed no substantial changes (Tr. 243-244).

### C.   Vocational Expert Testimony

VE   Pauline McEachin stated that based on Plaintiff's testimony, her semi-skilled work as  a school bus driver was performed at the sedentary level of exertion, indicating that the only transferrable skill from her former job was CDL certification (Tr. 296).  ALJ White posed the following question to the VE:

> "Assume that we have a person the age of Ms. Howard, 47, with the same background vocationally and educationally.  Assume this person has the following limitations.  The person would need the option to sit or stand throughout the day. Ten pound lifting limitation. No repetitive use of the right hand. With . . . [those] limitations could she return to past relevant work ?"

(Tr. 296).  The VE found that although Plaintiff could not return to her past relevant work, she could perform unskilled, sedentary work as a video surveillance monitor (2,000 jobs), information clerk (1200), ID clerk (1100), and visual inspector (2200) (Tr. 297).  The VE found that if the same individual was further limited by the need to lie down two to three times a day, she would be precluded from all employment (Tr. 297).

-8-

D.      **The ALJ's Decision**

Citing Plaintiff's medical records, ALJ White found severe impairments of status post

right wrist fracture, coronary artery disease, diabetes mellitus, obesity, and degenerative joint

disease of the right hip and knee (Tr. 10). Nonetheless, he determined that although  Plaintiff

had  severe impairments, they neither met nor equaled any impairment listed in Appendix 1

Subpart P, Regulations No. 4. (Tr. 10).

He concluded, adopting the VE's job findings, that  Plaintiff retained the residual

functional capacity to "lift no more than 10 pounds at a time, and must be allowed a sit/stand

option.  In addition, [she]cannot use her right hand for any repetitive activities "(Tr. 14).

The ALJ rejected Plaintiff's allegations of disability, citing her daily activities which

included cooking, cleaning, driving, grocery shopping, dining out, and visiting her mother,

speculating that Plaintiff "can do more, and is in less pain, than she admits" (Tr. 11).  He

declined to give more than "minimal" weight to Dr. Benedict's disability finding, stating that

"an opinion of that magnitude seems contrary to [his] otherwise unremarkable clinical

observations and findings" (Tr. 12).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine

whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of*

*Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985).  Substantial evidence is more

than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S.

389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she

-10-

can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has

the burden of proof as steps one through four, but the burden shifts to the Commissioner at

step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the

residual functional capacity to perform specific jobs existing in the national economy."

*Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A.  Step Two Impairments

Plaintiff argues first that the ALJ erred by omitting "low back pathology" from the list

of impairments he found severe.  *Plaintiff's Brief* at 11.  She maintains that in addition to

two back surgeries performed in the 1980s, a 1999 x-ray shows "marked disc space

narrowing and degenerative facet joint changes." *Id*. at 12; *citing* Tr. 86.  She contends that

the ALJ's failure to include low back problems among her severe impairments at Step Two

of his analysis taints his ultimate conclusion that she could perform a limited range of

sedentary work.  *Id.* at 11-13.

The Step Two analysis is performed pursuant to 20 CFR § 416.921(a) which defines

a non-severe impairment as one that does not "significantly limit [the]  physical or mental

ability to do basic work activities."   The same regulation defines "basic work activities" as

"understanding, carrying out, and remembering simple instructions; use of judgment;

responding appropriately to supervision, co-workers and usual work situations; and dealing

with changes in a routine work  setting." *Id.*  The court in  *Farris v. Secretary of HHS ,* 773

F.2d 85, 89 (6th Cir. 1985) found that "the second stage severity inquiry, properly

interpreted, serves the goal of administrative efficiency by allowing the Secretary to screen out totally groundless claims." The court cautioned that an "overly stringent interpretation of the severity requirement would violate the statutory standard for disability by precluding administrative determination of the crucial statutory question [of] whether, in fact, the impairment prevents the claimant from working, given the claimant's age, education and experience." An impairment can be considered "not severe . . . only if the impairment is a 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.'" *Farris,* 773 F.2d at 90; *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir.1984). This Circuit has generally construed the Step Two severity regulation as a *de minimis* hurdle in the disability determination process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). However, the omission of an explicit finding of Step Two impairments where substantial evidence supports the presence of a work-related limitation does not in and of itself require remand. *See Street v. Barnhart* 340 F.Supp.2d 1289 (2004), 1293 -1294 (M.D.Ala.,2004). *See also Moran v. Commissioner of Social Security* 2003 WL 22002432, 2 (E.D.Mich.,2003); *Leeper v. Sullivan* 1990 WL 77874, 2 (N.D.Ill.1990).

The ALJ's lack of reference to Plaintiff's back problems at Step Two of his analysis does not warrant remand. First, substantial evidence supports the conclusion that Plaintiff's back condition did not contribute to her work-related limitations. As discussed by the ALJ, the fact Plaintiff worked for several years as a bus driver after undergoing back surgeries belies her claim that she suffers from "severe and persistent back pain" to a disabling extent

(Tr. 10-11).  Further, within same month that imaging results showed "[m]arked disc space narrowing" of  the lower lumbar spine, Plaintiff acknowledged to a physical therapist that she had returned to "normal work activities" after her back surgeries (Tr. 149).  Plaintiff indicated on a medical history form dated October 11 (ten days after her x-ray) that she her pain medication was limited to Advil[2] (Tr. 147).  Notes from her emergency room treatment directly following her March, 1997 accident indicate that Plaintiff denied any lumbar back pain (Tr. 69).   Also in March, 1997, Plaintiff completed a medical history form, indicating that her medical care prior to her accident was  limited to treatment for her "bad knee" (Tr. 146).   While during an earlier period Plaintiff clearly experienced occupationally-limiting back problems, substantial evidence supports  the ALJ's decision to omit back pain from his Step Two findings.  *See Buettner v. Secretary of Health and Human Services,* 686 F.Supp. 616,618 (W.D.Mich.,1988) (upholding the ALJ's Step Two finding that the plaintiff's lupus, although previously debilitating, was non-severe during relevant period and thus  would not interfere with basic work activities.)

Next, assuming *arguendo* that substantial evidence does not support the ALJ's finding that Plaintiff did not experience severe back pain, as discussed above, such an error in and of itself does not support remand.  Although the ALJ excluded back pain from his Step Two conclusions, he found that Plaintiff experienced degenerative joint disease of the right hip and knee (Tr. 13).  While these impairments of course, are not interchangeable with back

---

[2]Plaintiff stated on the medical history form that she sought treatment for right hand and wrist pain, omitting any mention of lower back problems (Tr. 147).

pain, in this case, the hypothetical question and RFC acknowledged that Plaintiff's degenerative conditions created work-related limitations which were also applicable to limitations created by back pain.[3]  The hypothetical question, which formed the basis of the VE's job findings and the ultimate RFC, limits Plaintiff to sedentary work with a sit/stand option (Tr. 296).  I have reviewed Plaintiff's entire medical history and cannot find any basis (including Plaintiff's subjective allegations) for concluding that Plaintiff's back pain requires more stringent work limitations than those set forth in the RFC.  Admittedly, in some instances an improper Step Two omission serves to invalidate the entire decision *(See Nowlen v.Commissioner of Social Sec*. 277 F.Supp.2d 718, 725-726 (E.D.Mich.,2003) (failure to include depression at Step Two, despite a diagnosis by multiple treating physicians, coupled with an omission of *any* mental health limitations from the RFC mandated remand).  However, in the present case, the ALJ's error, if any, was rendered harmless by an RFC that severely curtailed Plaintiff's work activities to the extent necessary to account for her back problems.

_____

[3]*Pompa v. Commissioner of Social Sec.,* 73 Fed.Appx. 801, 803 (6th Cir. 2003)(unpublished) notes that "once the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider all impairments, severe and non-severe, in the remaining steps. Because the ALJ found that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Id*., *citing* 20 C.F.R. § 404.1545(e).  While I disagree that the distinction between severe and non-severe impairments at Step Two is generally "of little consequence" (see *Nowlen v.Commissioner of Social Sec*., *infra*), in the present case, the ultimate RFC reflected limitations created by back pain as well as degenerative disorders of the hip and knees.

**B.    SSR 96-9p**

Plaintiff argues next that the ALJ neglected to "consider or make reference" to Social Security Ruling 96-9p which lists several factors to be considered when finding that a claimant is capable of only a limited range of sedentary work. *Plaintiff's Brief* at 13-14. She maintains that a proper application of the Ruling would have resulted in a disability finding, due to the fact that she experienced significant dominant hand limitations. *Id.* at 14-15.

SSR 96-9p indicates that "if an individual is unable to perform her past relevant work and the individual is unable to perform the full range of sedentary work, consideration must be given to whether there is other work in the national economy which the individual could perform." *Pompa v. Commissioner of Social Sec.* 73 Fed.Appx. 801, 803, 2003 (6th Cir. 2003)(unpublished); *citing* SSR 96-9p. While the Ruling cautions that the "mere inability to perform substantially all sedentary unskilled occupations" does not "equate with a finding of disability," consideration must be given to whether other work exists in the national economy which the individual could perform. *Id.*

In regard to manipulative limitations, the Ruling states in pertinent part that "[m]ost unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity . . . . Any significant manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base."

Plaintiff's argument that she is entitled to remand pursuant to SSR 96-9p fails for several reasons.    First, contrary to her contention, the hypothetical question included

-15-

Plaintiff's non-exertional limitation on dominant hand use by adding a prohibition on "repetitive use" of her right hand, demonstrating implicitly that the ALJ recognized that such a limitation would narrow the sedentary, unskilled job base and should be included to ensure an accurate VE response (Tr. 296).  Next, even assuming that the ALJ created a deficient hypothetical question that did not include a limitation on right hand use, none of the VE's job findings (video surveillance monitor, information clerk, ID clerk, and visual inspector) implicate the repetitive use of her dominant hand (Tr. 296).  Hence, if any such error were to occur, it would be mitigated by the VE's conclusions.

Finally, the ALJ's decision to include more than minimal restrictions on Plaintiff's right hand use reflects a very generous reading of the record.   A number of Plaintiff's treating and consultive physicians have indicated that her subjective complaints stand unsupported by objective evidence.  Five months after her bus accident Dr. Dass opined that Plaintiff's Carpal Tunnel Syndrome was "mild" and that she did not require surgical intervention, adding that he did not believe Plaintiff had "any incentive to return . . .work" (Tr. 144, 160).  Dr. Sorscher, refusing to speculate on whether Plaintiff could return to her work as a bus driver, added that he believed Plaintiff was not "totally disabled from any and all occupations" (Tr. 227).  He  stated further that objective findings did not correlate with her subjective complaints (Tr. 227).  Dr. Henderson found one year after the accident that Plaintiff could return to her work as a bus driver (Tr. 235).  Dr. Henderson noted further that she observed Plaintiff (outside of the treating setting) using her right hand with ease (Tr. 235).  An examination report by a physical therapist states that Plaintiff's right wrist did not

show the atrophy expected based on Plaintiff allegations of non-use (Tr. 155).  Although one treating physician stated that Plaintiff was unable to work due to diabetes and a heart condition, the ALJ properly rejected his opinion based the on fact that the medical finding was contradicted by the conclusions of numerous other treating and consultive sources as well as Plaintiff's regular activities.

I note that Plaintiff has not presented a particularly strong case for benefits, and as a whole, the record points overwhelmingly to a finding of non-disability.  The administrative decision is well within the "zone of choice" accorded to the fact-finder at the administrative level.  Pursuant to *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc), the ALJ's decision should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v.*

*Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: May 15, 2006

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on May 15, 2006.

S/Susan Jefferson
Case Manager

-18-